IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>AMBER YOUNG,<br><br>       Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:06 CR 37 |

  Defendant Amber Young requests suppression of evidence discovered on her person during a search conducted by Officer Brett Miller. According to the Untied States, Officer Miller stopped Ms. Young's vehicle and conducted the challenged search under the authority of a search warrant. Ms. Young argues that the warrant in question only authorized a search of her person if she happened to be present at an apartment that was also subject to the search warrant. Because Officer Miller undertook the search of Ms. Young in the good-faith belief that the warrant authorized the search, Ms. Young's motion to suppress is denied.

**<u>Background</u>**

  After receiving a complaint about alleged drug use and distribution occurring at an apartment in Taylorsville, Utah, Officer Miller started to investigate. Officer Miller learned from a confidential informant that Ms. Young lived in the apartment and was selling substantial quantities of methamphetamine from within the apartment. After learning that the confidential informant had purchased methamphetamine from Ms. Young in the past, Officer Miller decided

to set up controlled purchases of methamphetamine to confirm the confidential informant's allegations.

Officer Miller and the confidential informant conducted two controlled purchases of methamphetamine. In each case, Officer Miller searched the confidential informant before the transaction and both times the confidential informant returned with a substance that field-tested positive as methamphetamine.

After the second controlled purchase, Officer Miller prepared an affidavit in support of a search warrant. Officer Miller's affidavit outlined his experience in drug interdiction and investigation and then detailed the steps he had followed in pursuing his investigation. The affidavit contained seven paragraphs describing what evidence Officer Miller sought to discover. The first six paragraphs focus expressly on evidence Officer Miller believed he would discover inside the apartment itself. The final paragraph states that Officer Miller "believes that [Ms.] Young should be searched for narcotics. Through training and experience your affiant knows that persons engaged in ongoing criminal activities such as narcotics distribution tend to conceal narcotics on their person." (Aff. for Search & Seizure Warrant 4, attached as Addendum A to Memo. in Supp. of Mot. to Suppress.)

Utah State District Court Judge Pat Brian issued a warrant based on Officer Miller's affidavit. The warrant contains two separate paragraphs in bold type that describe the warrant's scope. The first refers only to the apartment in which the alleged drug distribution was occurring. The second refers directly and exclusively to Ms. Young herself.

The day following the issuance of the warrant, Officer Miller stopped Ms. Young on the freeway, many miles away from the apartment mentioned in the warrant. Officer Miller proceeded to search Ms. Young and discovered methamphetamine. Ms. Young challenges the

legality of the search of her person and requests suppression of the evidence discovered by Officer Miller.

## Analysis

While Ms. Young challenges the validity of the search, she "does not challenge the probable cause finding or the facial validity of the warrant." (Memo. in Supp. of Mot. to Supp. 4.)  Instead, Ms. Young argues that the warrant only authorized a search of the apartment and that the warrant allowed a search of Ms. Young only if she was on the premises when the warrant was executed.  Accordingly, Ms. Young claims that Officer Miller's execution of the warrant was improper, not the warrant itself.

The United States reads the warrant differently.  It argues that the text of the warrant indicates that a probable cause determination--separate and apart from that made in relation to the apartment--supported the warrant's approval of a search of Ms. Young, wherever she may be found.  According to the United States, because Officer Miller reasonably believed that the warrant allowed the search, the exclusionary rule should not operate to suppress the evidence found on Ms. Young.

A review of the warrant supports the interpretation proposed by the United States.  The warrant contains two separate paragraphs in bold type that articulate the warrant's scope.  The first paragraph is confined exclusively to the apartment.  The second is confined exclusively to Ms. Young.  The affidavit that Officer Miller submitted in support of the warrant similarly makes two distinct requests: (1) permission to search the apartment, and (2) permission to search Ms. Young.

In this sense, the warrant is distinguishable from the warrant in Parks v. Kentucky, 192 S.W.3d 318 (Ky. 2006), the case upon which Ms. Young primarily rests her motion to suppress.

3

In Parks, the court held that officers exceeded the scope of a warrant that authorized the search of a suspect's residence and "any vehicle on the property . . . [and] any person present at the time [the] search warrant is executed," when they stopped and searched a vehicle in which the suspect was a passenger. Id. at 323, 329. In Parks, the language of the warrant expressly conditioned the permission to search the vehicle on its presence at the suspect's residence. The warrant in this case contains no such limitation.

The conclusion that the language of the warrant authorizes a search of Ms. Young that is not conditioned on her presence at the apartment undoubtedly raises questions about the validity of the warrant. But the United States argues that there is no need to assess the underlying validity of the warrant because Officer Miller relied upon and executed the warrant in good faith. Accordingly, the United States contends that the exclusionary rule does not operate to suppress the evidence obtained as a result of the search.

The United State's argument relies upon the good-faith exception to the exclusionary rule recognized by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984). Because application of the good-faith exception in this case resolves concerns over the admissibility of the evidence, there is no need to assess the underlying validity of the warrant itself. See, e.g., United States v. Price, 265 F.3d 1097, 1102 (10th Cir. 2001) ("If this court determines that officers acted in good faith[,] . . . it does not need to reach the issue of whether probable cause existed for the warrant."); United States v. Bishop, 890 F.2d 212, 216 (10th Cir.1989) ("[R]esolution of whether there was probable cause supporting the warrant is not necessary to our decision . . . because . . . the agents' conduct clearly falls withing the 'good faith exception' to the exclusionary rule.").

"In Leon, the Court held that evidence obtained pursuant to a constitutionally defective

search warrant is admissible at trial if the officers executing the search warrant reasonably relied on the warrant and there is no evidence the officers misled the magistrate issuing the warrant." United States v. Angelos, 433 F.3d 738, 746 (10th Cir. 2006). In so holding, the Court recognized that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Leon, 468 U.S. at 921. Accordingly, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918.

When an officer relies on a warrant, it is presumed that the officer is acting in good faith. See United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985) ("The first notion to be remembered in considering the good faith principle is the presumption created in Leon that when an officer relies on a warrant, the officer is acting in good faith."). Therefore, when an officer relies on a warrant, the good-faith analysis is confined to "the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993) (internal quotation omitted). "[W]hen reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are 'devoid of factual support, not merely whether the facts they contain are legally sufficient.'" Id. (quoting Cardall, 773 F.2d at 1133).

Here, Officer Miller relied on a warrant when searching Ms. Young. The warrant contained two bolded paragraphs that articulated the warrant's scope. The first referred exclusively to the apartment. The second referred exclusively to Ms. Young. Admittedly, the facts submitted to the magistrate in support of Officer Miller's request for a warrant to search Ms. Young are sparse. But Officer Miller stated his position to a detached magistrate and was

granted a warrant that, on its face, does appear to authorize a search of Ms. Young separate and apart from the search of the apartment.

Nothing in the record indicates that Officer Miller should have viewed the warrant as constitutionally suspect. Accordingly, he acted reasonably in relying on the warrant and the evidence he obtained is not subject to suppression. See id. at 1455 ("Given the strong presumption in favor of warrant searches, the 'great deference' accorded to a magistrate's probable cause determination, and the fact that the warrant affidavit contained sufficient facts at least to establish a reasonable suspicion of criminal activity, we hold that a reasonable officer . . . would have assumed the search warrant was valid.").

## Conclusion and Order

The warrant in this case purported on its face to authorize a search of Ms. Young separate and apart from a search of her apartment. Officer Miller reasonably relied on the validity of that warrant when conducting the search that Ms. Young now challenges. Because suppression of the evidence will not further the purposes of the exclusionary rule, Ms. Young's Motion to Suppress is DENIED.

DATED this 28th day of August, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge